FILED
MAR 17 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**GOVERNMENT PENSION INVESTMENT FUND,**
**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**
**Defendant.**

**Docket No. 06-218 T**

**COMPLAINT**

Government Pension Investment Fund ("Plaintiff" or "GPIF"), a.k.a. Nenkin Shikin Unyo Kikin, by its counsel, brings this action to recover $29,119,954, or such greater amount as is legally recoverable, which sum represents an amount improperly retained by the United States of America ("Defendant"). In support of this action, Plaintiff alleges as follows:

**GENERAL ALLEGATIONS**

1. This action is brought to recover an overpayment of Federal income tax and interest thereon, arising under the Internal Revenue Code of 1986, as amended (the "Code"), Title 26, United States Code, for the fiscal period ended March 31, 2002 ("2002"). Jurisdiction is conferred upon this Court under section 1491, Title 28, United States Code.

2. GPIF is organized and existing under the laws of the Government of Japan. GPIF's principal offices are located at 1-4-1 Kasumigaseki, Chiyoda-Ku, Tokyo, Japan 100-8985. GPIF's Federal employer identification number is 98-0155888.

3. Defendant is the United States of America.

GPIF's U.S. source investment income for the period ended March 31, 2002 is not exempt from federal income tax pursuant to section 892.

WHEREFORE, Plaintiff, Government Pension Investment Fund, a.k.a. Nenkin Shikin Unyo Kikin, prays for judgment against Defendant in the amount of $29,119,954, or such other amount as Plaintiff may be entitled to recover, and interest thereon as allowed by law, and for Plaintiff's costs incurred herein.

Respectfully submitted,

A. Duane Webber
Attorney of Record

Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Phone: (202) 452-7040
Facsimile: (202) 472-7074

Scott A. Knott
Of Counsel

Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Phone: (202) 452-7017
Facsimile: (202) 472-7074

Attorneys for Plaintiff,
Government Pension Investment Fund

Dated: March 17, 2006

4. On September 12, 2002, GPIF filed with the IRS Service Center a Form 1120F, U.S. Income Tax Return of a Foreign Corporation, with respect to 2002.

5. On September 6, 2005, GPIF filed with the IRS Service Center in Philadelphia, Pennsylvania an amended Form 1120F, U.S. Income Tax Return of a Foreign Corporation, with respect to 2002 (the "Claim for Refund"), in which GPIF claimed a refund of Federal income tax in the amount of $29,119,954, or such greater amount as is legally refundable. A copy of GPIF's Claim for Refund is attached hereto and marked as Exhibit A.

6. GPIF filed the Claim for Refund for 2002 within the period of limitations prescribed under section 6511 of the Code.

7. As of the date hereof, the Commissioner of Internal Revenue has not granted and has not denied GPIF's Claim for Refund. More than six months has elapsed since the date on which GPIF filed the Claim for Refund.

8. GPIF's Claim for Refund reflects an overpayment of Federal income tax.

9. The Federal income tax for which Plaintiff seeks a refund is the Federal income tax imposed with respect to dividends and interest relating to investments in U.S. securities. Such income is exempt from Federal income taxation pursuant to section 892. Nonetheless, GPIF's withholding agents withheld at the source income tax in the amount of $29,119,954 with respect to GPIF's US source investment income.

**COUNT I**

**SECTION 892 EXEMPTION OF INCOME RECEIVED BY A FOREIGN GOVERNMENT FROM INVESTMENTS IN THE UNITED STATES**

10. GPIF is an organization of the Japanese Government and is based in Tokyo, Japan.

in the Tax Court case on March 8, 2002. Copies of the Tax Court's Order and Decision are attached hereto and marked as Exhibits D and E, respectively.

89. In addition, the Commissioner of Internal Revenue and GPIF executed a closing agreement pursuant to which the Commissioner agreed that GPIF's U.S. source investment income for the periods ended March 31, 1999, March 31, 2000, and March 31, 2001, was exempt from federal income tax pursuant to section 892.

90. The substantive issue before this Court as set forth in Count I above, i.e., whether GPIF's U.S. source investment income was exempt from federal income tax pursuant to section 892 for the period ended March 31, 2002, is identical in all respects to the issue that was before the Tax Court in the prior proceeding with respect to GPIF's U.S. source investment income for the periods ended March 31, 1992 through March 31, 1998.

91. The allegations set forth in paragraphs 10 through 83 above are incorporated by reference in this Count II.

92. The controlling facts with respect to the section 892 issue for the periods ended March 31, 1992 through March 31, 1998 are the same as the controlling facts with respect to that issue for the period ended March 31, 2002.

93. The controlling legal principles with respect to the section 892 issue for the periods ended March 31, 1992 through March 31, 1998 are the same as the controlling legal principles with respect to that issue for the period ended March 31, 2002.

94. Based on the final judgment of the United States Tax Court with respect to the exemption of GPIF's U.S. source investment income from federal income tax pursuant to section 892, the Government is precluded by the doctrine of collateral estoppel from asserting that

11. GPIF was organized on April 1, 2001, as the successor in interest to Nenkin Fukushi Jigyodan ("NFJ"), a.k.a. Pension Welfare Service Public Corporation, pursuant to The Law Related to the Dissolution of a Pension Welfare Corporation and the Assumption of its Operations, No. 20 (2000) (the "NFJ Operation Assumption Act") and The Government Pension Investment Fund Law, No. 19 (2000) (the "GPIF Law"). On April 1, 2001, NFJ ceased to exist and all the assets and liabilities of NFJ became those of GPIF.

12. Pursuant to the GPIF Law, GPIF was established to manage and invest the pension funds in the Employees' Pension Insurance program and the National Pension programs.

13. Pursuant to Article 25(2) of the Constitution of Japan, a social mission of the Government of Japan is to maintain and promote the social welfare, social security, and public health of its citizens. This is a fundamental governmental responsibility, objective, and purpose that is pursued at all levels of government.

14. Under the Constitution of Japan, the National Diet is the representative body with legislative authority in the Government of Japan. All national statutes and laws are considered and adopted by the National Diet.

15. The Ministry of Health, Labour and Welfare was responsible for all the activities of GPIF.

16. Within the Government of Japan, the Minister of Health, Labour and Welfare, which is a cabinet level position, is responsible for establishing, implementing, and maintaining programs adopted and approved by the National Diet of Japan relating to the health and welfare of Japan's citizens. The scope of the Minister's responsibility, which is delegated by the National Diet, includes welfare for the elderly, self reliance and rehabilitation for the disabled, healthy upbringing for children, public assistance, medical care insurance and pensions, sickness

## COUNT II

## DEFENDANT IS COLLATERALLY ESTOPPED FROM ASSERTING THAT GPIF'S U.S. SOURCE INVESTMENT INCOME WAS NOT EXEMPT FROM TAX PURSUANT TO SECTION 892

84. GPIF, as successor in interest to NFJ, asserted the same position reflected in this Complaint, based on substantially the same facts relating to the periods ended March 31, 1992 through March 31, 1998, in litigation before the United States Tax Court (Docket No. 10653-00). In that case, GPIF asserted, as in this case, that its U.S. source investment income (for the periods ended March 31, 1992 through March 31, 1998) was exempt from federal income tax pursuant to section 892.

85. GPIF filed a Petition in the United States Tax Court in Docket No. 10653-00 on October 4, 2000. On December 4, 2000, the Commissioner of Internal Revenue filed its Answer, in which it denied substantially all of the substantive allegations in the Petition.

86. On March 22, 2001, counsel for the Government in the Tax Court case executed a letter in which the Government admitted certain facts and positions relating to the application of section 892 to GPIF's U.S. source investment income, and disposed certain other facts and positions. A copy of this letter is attached hereto and marked as Exhibit B.

87. On April 2, 2001, GPIF filed a Motion for Summary Judgment in the Tax Court case in which GPIF set forth the facts and legal analysis in support of its position that its U.S. source investment income was exempt from federal income tax pursuant to section 892. A copy of that Motion for Summary Judgment is attached hereto and marked as Exhibit C.

88. On March 7, 2002, the Tax Court ordered that "Upon due consideration of Petitioner's Motion For Summary Judgment, filed April 4, 2001 it is ORDERED that the above-mentioned Motion For Summary Judgment is granted." The Tax Court entered a final Decision

prevention and treatment, food hygiene, water supply, measures to address the declining birthrate and the aging population, public hygiene, development of employment conditions, securing employment, and virtually all other aspects of the health, labour, and welfare of the citizens of Japan.

17. The primary mission of the Minister of Health, Labour and Welfare is to protect and promote the health and welfare of the people of Japan, develop employment conditions, secure employment, and to secure the livelihood of the people of Japan in a comprehensive manner. Pursuant to Article 1 of the Employment Pension Insurance Law, Article 1 of the National Pension Law, Article 4-1-98 and 4-1-99 of the Ministry of Health, Labour and Welfare Establishment Act, and the principles reflected in Article 25(2) of the Japanese Constitution, the Minister of Health, Labour and Welfare is responsible for the employee's pension insurance programs and national pension programs, the purpose of which is to maintain and improve the health of the Japanese citizens' lives, by avoiding impairment of their stable lives caused by old age, disability, and death, through their collective and joint responsibility.

18. The Government of Japan established and maintains various pension programs for different groups of Japanese citizens. Substantially all citizens of Japan are covered by one or more of these pension programs (as insured parties or beneficiaries of insured parties), including the Welfare Pension Insurance (Kousei Nenkin) and the National Pension (Kokumin Nenkin). Together, these various pension programs constitute the national social security system of the Government of Japan ("National Pension Program" or "Public Pension System").

19. In accordance with Article 44(1) of the GPIF Law and Article 4-1-111 of the Ministry of Health, Labour, and Welfare Establishment Act, the Minister of Health, Labour and Welfare and his delegates within the Ministry of Health, Labour and Welfare are responsible for,

76. GPIF did not charge any fees at the time it makes loans, and did not receive any revenue from the borrowers except the interest on the loans.

77. GPIF was an "integral part" of the Government of Japan within the meaning of Temporary Treasury Regulation section 1.892-2T(a)(2), and was a "foreign government" within the meaning of Temporary Treasury Regulation section 1.892-2T(a)(1).

78. In the alternative, GPIF was a "controlled entity" of the Government of Japan within the meaning of Temporary Treasury Regulation section 1.892–2T(a)(3), and was a "foreign government" within the meaning of Temporary Treasury Regulation section 1.892-2T(a)(1).

79. GPIF did not engage in "commercial activities" within the meaning of section 892(a)(2)(B) and Temporary Treasury Regulation section 1.892-4T.

80. GPIF's investment functions did not constitute "commercial activities" within the meaning of section 892(a)(2)(B) and Temporary Treasury Regulation section 1.892-4T.

81. GPIF's functions relating to recreational facilities did not constitute "commercial activities" within the meaning of section 892(a)(2)(B) and Temporary Treasury Regulation section 1.892-4T.

82. GPIF's functions relating to governmental loan programs did not constitute "commercial activities" within the meaning of section 892(a)(2)(B) and Temporary Treasury Regulation section 1.892-4T.

83. GPIF's dividend income from investments in securities in the United States was exempt from United States income tax pursuant to section 892.

and actively control and manage the activities of GPIF. The Minister of Health, Labour and Welfare is obliged to ensure that GPIF performs the governmental functions delegated by the National Diet consistent with the overall mission and objectives of the Ministry of Health, Labour and Welfare. Officials and employees of the Ministry of Health, Labour and Welfare have written and oral communications with officials and employees of GPIF on a frequent basis, and work directly together to fulfill the mutual objectives of the Minister of Health, Labour and Welfare and GPIF.

20. GPIF is one of several instrumentalities that the Minister of Health, Labour and Welfare uses to discharge governmental responsibilities under his control, and is an essential and integral part of the Ministry of Health, Labour and Welfare within the Government of Japan. No other organ or instrumentality of the Government of Japan is charged with the same responsibilities and functions as those that are assigned by the National Diet of Japan to GPIF (and the Ministry of Health, Labour and Welfare).

21. GPIF is organized as a "kikin" pursuant to a special establishment law adopted by the National Diet of the Government of Japan. A "kikin" is an instrumentality of the Government of Japan that is established for a specific governmental purpose and function.

22. GPIF is not organized as a private stock corporation (a "kabushiki kaisha") under the Japanese Commercial Code, and does not operate as such. GPIF is not a legal person of private stature, and does not have any capacity beyond that established by the Government of Japan.

23. GPIF does not operate to generate a profit for its own account from any one or more of its activities, and did not in fact generate a profit for its own account from its activities in

recreational facilities. GPIF did not have an objective or intention of generating any profit from the recreational facilities, and did not receive any such profit.

71. The Government of Japan adopted several governmental loan programs for which it delegated responsibility to NFJ. Each loan program administered by NFJ was expressly authorized by special legislation adopted by the National Diet, and was adopted for the governmental purpose of providing for the shelter, medical care, health and well being of the insureds. This responsibility has been transferred to GPIF.

72. In accordance with the governmental purpose of providing for the welfare of insureds, Article 12 of the NFJ Operation Assumption Act authorized GPIF to make subsidized, long-term, fixed-rate loans to corporations for on-lending to insureds to construct or purchase housing.

73. GPIF obtained funds for the loan programs that it administered using amounts received from the Minister of Health, Labour and Welfare and funds borrowed from the Fiscal Investment and Loan Program ("FILP").

74. In each year, the interest expense incurred by GPIF on funds borrowed from FILP to support the loan programs that it administered exceeded the interest revenue that GPIF received from the recipients of loans under such programs. The Ministry of Health, Labour and Welfare provided a subsidy to GPIF to cover the excess of the interest expense over the interest revenue related to the loan programs, as well as GPIF's expenses incurred in connection with such programs.

75. GPIF made loans only pursuant to the governmental loan programs adopted by the National Diet. GPIF did not undertake any loans for the purpose of generating a profit.

any period from April 1, 2001 through the present (and NFJ did not generate a profit from its activities in any period prior to April 1, 2001).

24. GPIF has not distributed, and will not distribute, any profits or property to any private person.

25. Like other organs of the Government of Japan, GPIF is exempt from corporation taxes, income taxes, and other taxes.

26. The Government of Japan contributed 100 percent of the capital of GPIF, and no other person is permitted to contribute capital to GPIF.

27. Like other organs of the Government of Japan, upon dissolution GPIF's assets would revert back to the Government of Japan.

28. GPIF's operations and its various programs are funded through capital and subsidies from the Government of Japan (through the Ministry of Health, Labour and Welfare). The fund management fees paid to Trust Banks are funded by the investment income of the accounts managed by the Trust Banks.

29. GPIF performs only governmental functions and activities that are expressly delegated to GPIF by statutes adopted by the National Diet and are related to the governmental responsibilities of the Minister of Health, Labour and Welfare.

30. GPIF does not have operational independence to exercise the functions delegated by the law adopted by the Japanese Diet. Rather, GPIF's activities and expenditures are closely monitored and directed by the Ministry of Health, Labour and Welfare for public policy purposes.

31. Pursuant to Article 12 of the GPIF Law, the Minister of Health, Labour and Welfare appoints the Chief Director and the Auditor of GPIF. The Chief Director of GPIF

the recreational facilities to Nenkin Hoyo Kyokai ("NHK") and various local prefectures in which the facilities were located (the "Prefectures").

65. Each Prefecture further delegated to a non-profit foundation responsibility to operate the relevant recreational facility. NHK and the non-profit foundations that operated the recreational facilities are referred to herein as the "Foundations." The Foundations managed and operated the recreational facilities using their own employees and other service providers engaged by the Foundations.

66. GPIF's employees did not perform any functions or activities relating to the day-to-day management or operation of the recreational facilities. GPIF did not have the authority to control the activities of the Foundations.

67. The Management Delegation Agreements (and the related sub-delegation agreements) established certain general parameters within which the Foundations were obligated to manage and operate the recreational facilities. The Foundations were required to establish user charges in accordance with reasonable standards and taking into account the recreation center's long-term receipts and disbursements break-even point. The Foundations were required to manage the facilities with good care and to promote the welfare of pensioners, but GPIF did not establish specific policies for the operation of the recreational facilities.

68. The Foundations received all fees charged for the use of the facilities and incured all expenses relating to the operation of the facilities.

69. GPIF did not have any ownership or other financial interest in the Prefectures or the Foundations, and did not control or manage the functions of the Prefectures or Foundations.

70. GPIF did not receive any revenue from the Prefectures or Foundations that operated the recreational facilities or any other source in connection with the ownership of the

appoints, with the approval of the Minister of Health, Labour and Welfare, the other directors of GPIF.

32. Article 16 of the GPIF Law prohibits the Chief Director, directors, and internal auditor of GPIF from becoming an officer of an organization with a profit-making objective or engaging in any profit-making enterprise.

33. Like other employees of the Government of Japan, pursuant to Article 19 of the GPIF Law, the Chief Director, directors, internal auditor, and staff of GPIF are deemed to be engaged in public services for purposes of the Penal Code (Law No. 45, 1907) and other penal provisions.

34. Many of GPIF's directors, management officials, and staff personnel previously worked for another organ of the Government of Japan, including predominantly the Ministry of Health, Labour and Welfare. Each person who rotates from another government organ remains a member of the pension program applicable to such other government organ. Such person's status as an employee of the Government of Japan is included in the calculation of the employee's retirement allowances.

35. Pursuant to Article 30 and 47 of the GPIF Law, the Minister of Health, Labour and Welfare, after deliberation with the Minister of Finance, approves the operating guidelines for GPIF that set forth the parameters within which GPIF is required to implement its governmental responsibilities. GPIF performs its functions in accordance with these operating guidelines.

36. Pursuant to Articles 44 and 45 of the GPIF Law, the Minister of Health, Labour and Welfare issues orders to GPIF and requests reports from GPIF when necessary to monitor

develop a basic plan for the establishment of each facility, and to obtain the approval of the Minister of Health and Welfare of that plan.

59. The recreational facilities were transferred to GPIF on April 1, 2001, and GPIF was authorized by the National Diet to maintain such facilities pending their disposition. At a Cabinet meeting on December 19, 2001, the Japanese government adopted a resolution that instructed GPIF to dispose of the recreational facilities. Pursuant to that resolution, GPIF was obliged to dispose of the recreational facilities by March 31, 2006. By December 20, 2005, GPIF had completed the disposition of all of the recreational facilities.

60. GPIF maintained the recreational facilities by incurring the costs necessary to maintain, and to make occasional improvements to, the facilities.

61. GPIF maintained the recreational facilities solely for the governmental purpose of maintaining the health and welfare of the citizens of Japan. GPIF performed its functions relating to such facilities in accordance with the Facilities Operating Guidelines approved by the Minister of Health, Labour and Welfare.

62. GPIF incured expenses (including facility improvement costs, repair expenses, maintenance expenses, and other expenses) with respect to the recreational facilities. Each year, GPIF received from the Government of Japan a subsidy equal to the full amount of its actual out of pocket expenses (not including depreciation expenses) associated with the recreation facilities.

63. GPIF owned the recreational facilities, but did not operate the facilities or manage the operations.

64. Pursuant to Article 15 of the NFJ Operation Assumption Act and Management Delegation Agreements, GPIF delegated the responsibility for the management and operation of

the effective operation of GPIF within the governmental responsibilities of the Ministry of Health, Labour and Welfare.

37. Pursuant to Articles 33 and 47 of the GPIF Law, each year GPIF submits an annual budget to the Minister of Health, Labour and Welfare to be approved by that Minister after deliberation with the Minister of Finance. After approval, the funds to be provided to GPIF to subsidize its operations are allocated from other accounts within the Government of Japan.

38. The annual budget amounts of the contributions and subsidies required to fund GPIF's functions are developed, through its annual budget procedure, in concert with the Minister of Health, Labour and Welfare and the Minister of Finance, and are subject to approval by the National Diet as part of the budget of the Ministry of Health, Labour and Welfare.

39. Pursuant to Article 17 and 27 of the NFJ Operation Assumption Act and Article 47 of the GPIF Law, on a quarterly basis GPIF submits its plan relating to recreational facilities and loan programs for the following quarter to the Minister of Health, Labour and Welfare, whose approval after deliberation with the Minister of Finance is required.

40. Pursuant to Articles 35(1) and 47(iv) of the GPIF Law, each year GPIF submits its annual financial statements to the Minister of Health, Labour and Welfare, whose approval after deliberation with the Minister of Finance is required.

41. Generally, the Board of Audits of the Government of Japan audits GPIF twice each year to ensure that GPIF spends its funds and discharges its responsibilities in accordance with the delegation of authority pursuant to law and the instructions and guidelines of the Ministry of Health, Labour and Welfare.

53. All income from GPIF's investments in the United States constitutes dividend income (i.e., investment income from securities owned directly or through limited partnerships) with de minimus amounts of interest income.

54. GPIF places the investment income generated by the investments that it manages into a special account, and does not use any portion of such investment income (net of fund management fees) to pay staff salaries or other non-investment expenses of GPIF.

55. Pursuant to Article 79(1) of the Employees' Pension Insurance Law and Article 84(1) of the National Pension Law, which were adopted in 1954 and 1959, respectively, the National Diet authorized the Government of Japan to establish facilities necessary to promote the welfare of insureds, former insureds, and qualified recipients of the Public Pension System.

56. In 1961 the National Diet adopted Article 79(2) of the Employees' Pension Insurance Law and Article 84(2) of the National Pension Law, which delegated to NFJ the responsibility and the governmental authority to establish facilities to promote the welfare of the insureds and beneficiaries of the Employees' Pension Insurance and the National Pension.

57. In response to a demonstrated need for more and better facilities to provide citizens of Japan with the opportunity to enjoy recreation time in a wholesome and effective way, the Minister of Health and Welfare proposed legislation, which was adopted in 1973 by the National Diet (in Chapter 3, Article 17(1)(1) of the NFJ Law), to authorize NFJ to establish recreational facilities throughout Japan for use by pensioners, participants in a national pension program, and their families to enhance their welfare.

58. In the 1970's and 1980's, NFJ constructed thirteen recreational facilities in Japan, the last of which was completed by 1988. The facilities established by NFJ include health facilities, educational and cultural facilities, and other recreational facilities. NFJ was required to

42. GPIF is required under Article 40 of the GPIF Law to obtain the approval of the Minister of Health, Labour and Welfare before loaning, transferring, exchanging or pledging any properties established by the Minister of Health, Labour and Welfare.

43. GPIF performs three statutorily delegated responsibilities in support of the obligations of the Minister of Health, Labour and Welfare, including (1) management and investment of pension funds, (2) administration and control of the recreational facilities, and (3) administration of loans for governmental public policy purposes. GPIF carries out these governmental functions to promote the health and welfare of Japanese citizens.

44. GPIF does not perform any functions that are not directly related to one or more of the governmental responsibilities of the Minister of Health, Labour and Welfare. All functions undertaken by GPIF are functions that the Government of Japan is obligated to perform for the citizens of Japan pursuant to the Constitution and laws of Japan.

45. NFJ, the predecessor in interest to GPIF, was established in 1961 within the control, administration, and supervision of the Ministry of Health and Welfare (now called the Ministry of Health, Labour and Welfare), pursuant to the Nenkin Fukushi Jigyodan Law, No. 180 (1961) (the "NFJ Law") adopted by the National Diet.

46. Pursuant to Article 79 of the Employees' Pension Insurance Law that also was developed in 1961, Article 84(2) of the National Pension Law, Chapter 1, Article 1 and Chapter 3, Article 17, of the NFJ Law, NFJ's purpose was to promote the welfare of insureds, former insureds, and qualified recipients of Employees' Pension Insurance (Kousei Nenkin, a.k.a. Welfare Pension Insurance) and National Pension (Kokumin Nenkin) and their families by establishing recreational facilities and making loans.

> referred to as the "Pension Funds"), in accordance with the basic policies stipulated by the Minister of Health, Labour and Welfare pursuant to the provisions of the said Acts (hereinafter referred to as the "Basic Policies") and through the payment of profits from the said management and investment activities into the national treasury.

50. The Government of Japan, through the Ministry of Health, Labour and Welfare, performs the function of insuring the Public Pension System of Japan. Pursuant to legislation adopted by the National Diet (Articles 79(2) and 79(3) of the Employees' Pension Insurance Law, Articles 75 and 76 of the National Pension Law, and Article 28 of the GPIF Law), GPIF receives funds directly from the Minister of Health, Labour and Welfare and is assigned the task of managing those funds in order to strengthen the financial resources of the Public Pension System in Japan.

51. Pursuant to Chapter 3, Article 17(2) of the NFJ Law and Article 2 of the NFJ Future Funding Law, beginning in 1986 (in 1987 under the NFJ Future Funding Law), NFJ was authorized to engage in investment activities. In addition to its own investment activities pursuant to the GPIF Law, GPIF assumed these investment responsibilities of NFJ at the time GPIF was established on April 1, 2001, pursuant to Chapter 1, Article 1(1) of the NFJ Operation Assumption Act, and all investment assets of NFJ were transferred to GPIF on such date. GPIF conducts its own investment activities and the investment responsibilities it assumed from NFJ on an integrated basis.

52. GPIF fulfills these governmental investment roles by investing the funds entrusted to it from the Minister of Health, Labour and Welfare via trust banks and other investment institutions, including limited partnerships, in stocks and securities in various financial markets, including the United States.

47. Pursuant to an amendment to Article 17 of the NFJ Law in 1986, NFJ's purpose was expanded to include the management of funds borrowed from the government to generate funds necessary to perform these activities. Article 1 of the Law Concerning Additional Activities and Payments to the Treasury by Nenkin Fukushi Jigyodan in Support of the Future Funding of the Public Pension System adopted in 1987 (the "NFJ Future Funding Law"), established for NFJ an additional purpose to secure the funds necessary for the Public Pension System payments and to strengthen the financial base of the System by managing funds borrowed from the government and paying the proceeds of such funds to the national treasury.

48. Pursuant to amendments to the Employees' Pension Insurance Law and the National Pension Law in 2000, the Ministry of Health, Labour and Welfare now has the obligation to manage a portion of the pension payments paid by the insured of the Public Pension System as a pension fund. Under Article 79(2) of the Employees' Pension Insurance Law and Article 75 of the National Pension Law (as amended), the purpose of the management of the pension funds is to stabilize the operation of the Public Pension System to ensure that there are sufficient financial resources to benefit the insureds in the future. Under Article 79(3) of the Employees' Pension Insurance Law and Article 76 of the National Pension Law, the management of the pension funds by the Minister of Health, Labour and Welfare must be conducted by entrusting it to GPIF.

49. Consistent with the purpose of NFJ, GPIF was established by the National Diet, effective on April 1, 2001, for the following expressed purpose (Article 1 of the GPIF Law):

> The purpose of the Government Pension Investment Fund (*Nenkin Shikin Unyo Kikin*) shall be to assist the stable operation of employees' pension insurance programs and national pension programs, through the management and investment of funds entrusted by the Minister of Health, Labour and Welfare pursuant to the provisions of the Employees' Pension Insurance Act (Law No. 115 of 1954) and the National Pension Act (Law No. 141 of 1959) (hereinafter